UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-22034-CIV-LENARD/LOUIS

**OSCAR JULIEN-RIOU,**

    Plaintiff,

v.

**CITY OF MIAMI,
MIAMI-DADE COUNTY,
CITY OF MIAMI POLICE DEPARTMENT,
and IOANNYS LLANES,**

    Defendants.
_____/

**ORDER DISMISSING COMPLAINT AS A SHOTGUN PLEADING (D.E. 1), PROVIDING FOURTEEN DAYS TO FILE AN AMENDED COMPLAINT, DENYING AS MOOT CITY OF MIAMI'S MOTION TO DISMISS (D.E. 10), AND DENYING AS MOOT DEFENDANT IOANNYS LLANES'S MOTION TO DISMISS COUNTS III AND VI (D.E. 17)**

**THIS CAUSE** is before the Court on Defendant City of Miami's Motion to Dismiss, ("Motion," D.E. 10), filed June 29, 2021. Plaintiff Oscar Julien-Riou filed a Response on July 27, 2021, ("Response," D.E. 15), to which the City filed a Reply on August 3, 2021, ("Reply," D.E. 20). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

I.  **Background**[1]

Plaintiff is an African American male and a retired veteran with twenty years of service in the United States Army. (Compl. ¶ 7.) Following his service in the army, he was employed as a registered nurse with the Veterans Administration. (Id.) In mid-2018, he retired after twenty years with the V.A. (Id.) However, he continued to volunteer at the V.A. by playing piano for veterans in palliative care. (Id.)

In December 2018, Plaintiff—then sixty-three years old—lived across the street from Alonzo Kelly Park in Miami, Florida. (Id. ¶ 13.) The City of Miami and Miami-Dade County share concurrent jurisdiction over Alonzo Kelly Park, which is in a predominantly African American neighborhood. (Id. ¶¶ 15, 17.) After his retirement from the V.A., Plaintiff routinely visited Alonzo Kelly Park with a video camera to film himself making video blogs/journals wherein he discussed the idea of becoming a full-time Christian minister. (Id. ¶ 16.)

On December 10, 2018, around 7:00 PM, Plaintiff was sitting alone on a park bench in Alonzo Kelly Park recording one of his video journals. (Id. ¶¶ 18, 22.) Defendant Ioannys Llanes, an officer with the Miami Police Department, observed Plaintiff for several minutes, then approached Plaintiff and told him to leave the park because it was closed. (Id. ¶ 24.) No sign at Alonzo Kelly Park stated a closing time.[2] (Id. ¶ 20.) Plaintiff

---

[1] The following facts are gleaned from Plaintiff's Complaint, (D.E. 1), and are deemed to be true for purposes of ruling on the Motion to Dismiss.

[2] According to City of Miami Ordinance 38-3, "all municipally owned parks and playgrounds of the city . . . shall be closed to the general public from 10:00 p.m. until 7:00 a.m." (Compl. ¶ 19.) According to City of Miami Ordinance 38-4, the "police department shall cause

2

responded to Officer Llanes that he did not know the park was closed and gathered his belongings to leave the park, announcing to the officer that he was holding his video camera in his hand. (Id. ¶ 26.) Without warning, Officer Llanes grabbed Plaintiff, threw him down on the concrete pavement, and stated, "What's in your hand?" (Id. ¶ 27.) Officer Llanes also asked Plaintiff what Plaintiff had thrown away, but Plaintiff denied throwing anything away. (Id. ¶ 28.) Plaintiff did not attempt to flee and did not fight Officer Llanes. (Id.) The force applied by Officer Llanes injured Plaintiff. (Id. ¶ 30.) Officer Llanes called additional officers to the scene, including a K-9 unit. (Id. ¶ 31.) The officers handcuffed Plaintiff and searched him without consent. (Id. ¶¶ 32-33.) Officer Llanes detained Plaintiff in his police vehicle for over an hour. (Id. ¶ 35.) An officer briefly removed the handcuffs at the direction of a police sergeant who arrived on the scene, but then placed him back in handcuffs because one of the officers did not "feel comfortable" with Plaintiff being uncuffed. (Id.) Neither the police officers nor the K-9 unit found evidence of any criminal wrongdoing by Plaintiff during the detention, arrest, and search of the surroundings. (Id. ¶ 36.) Officer Llanes told other officers that Plaintiff was under arrest. (Id. ¶ 37.) After approximately two hours, the police released Plaintiff; although Plaintiff was not charged with any underlying criminal activity, Officer Llanes charged Plaintiff with resisting arrest without violence.³ (Id. ¶¶ 38-40.)

---

proper notice to be placed in the main entrances to the city parks, playgrounds and properties referred to in the preceding section, warning the general public that such properties are closed during the hours therein recited." (Id. ¶ 21.)

³ The Complaint provides a link to the video Plaintiff was recording when the incident occurred: https://youtu.be/2T5G5AMF2PA. (Compl. ¶ 22.)

On June 2, 2021, Plaintiff filed the instant Complaint against the City of Miami, Miami-Dade County, the City of Miami Police Department, and Officer Ioannys Llanes. (D.E. 1.)  However, he has since voluntarily dismissed Miami-Dade County from the action, (D.E. 9), and "concedes that the City's Police Department is an integral part of the City and therefore not subject to being sued separately[,]" (D.E. 15 at 3).  Thus, the Complaint's operative claims are as follows:

- Count I: Excessive Use of Force by Defendant Llanes (42 U.S.C. § 1983), (Compl. ¶¶ 69-74);
- Count II: Deliberate Indifference by City of Miami (42 U.S.C. § 1983), (id. ¶¶ 75-81);
- Count III: Battery by Officer Llanes (42 U.S.C. § 1983), (id. ¶¶ 82-85);
- Count IV: Negligent Hiring and/or Retention of Defendant Llanes by City of Miami (42 U.S.C. § 1983), (id. ¶¶ 86-94);
- Count V: Negligent Supervision and/or Retention of Defendant Llanes by City of Miami (42 U.S.C. § 1983), (id. ¶¶ 95-100);
- Count VI: Fourth Amendment Violation by False Arrest, False Imprisonment, and/or Malicious Prosecution by Defendant Llanes (42 U.S.C. § 1983), (id. ¶¶ 101-11);
- Count VII: Racial Discrimination Against the City of Miami, (id. ¶¶ 112-18);
- Count VIII: State Tort of False Arrest against City of Miami, (id. ¶¶ 119-25);
- Count IX: State Tort of Battery against the City of Miami, (id. ¶¶ 126-32); and

- Count X: State Tort of Negligence against the City of Miami, (id. ¶¶ 133-38).

On June 29, 2021, the City of Miami filed the instant Motion to Dismiss Counts II, IV, V, VII, VIII, IX, and X for failure to state a claim upon which relief can be granted. (D.E. 10.)  The City argues that (1) the Complaint fails to state plausible claims for municipal liability under 42 U.S.C. § 1983 and Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978), (Mot. at 6-11), and (2) sovereign immunity bars the state law claims, (id. at 11-12).

However, because the Court finds that the Complaint constitutes an impermissible shotgun pleading, the Court will confine its analysis to that issue.[4]

## II.  Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).

Under Rule 10(b), "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  "If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and

---

[4] On August 2, 2021, Officer Llanes filed a Partial Answer and Affirmative Defense to Plaintiff's Complaint, (D.E. 16), followed by a Motion to Dismiss Counts III and VI, (D.E. 17). Officer Llanes argues that Count III is (1) duplicative of the excessive force claim asserted in Count I, and (2) fails to state a claim because there is no cognizable claim for battery under Section 1983.  (See id. at 1-3.)  Plaintiff has not yet responded to Officer Llanes's Motion.

each defense other than a denial--must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified "four rough types or categories of shotgun pleadings." Id. at 1321. One type of shotgun pleading is a pleading "that commits the sin of not separating into a different count each cause of action or claim for relief." Id. at 1323 (citations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id.

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018). "They waste scarce judicial resources, 'inexorably broaden[] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[] the public's respect for the courts.'" Id. (quoting Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 981-83 (11th Cir. 2008)). A district court is required to permit a litigant one chance to remedy any shotgun pleading deficiencies. Id. at 1296. "In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings." Id.

### III.     Discussion

The Court sua sponte finds that the Complaint is an impermissible shotgun pleading because Counts IV, V, and VI assert multiple claims within a single count.

### a.     <u>Count IV</u>: "Negligent Hiring and/or Retention of Defendant Llanes by City of Miami (42 U.S.C. § 1983)"

Count IV alleges that the City both negligently hired <u>and</u> negligently retained Officer Llanes.  Although there is a dearth of case law regarding municipal liability claims for negligent hiring and/or negligent retention under Section 1983,[5] the Court finds that they are conceptually different and require different proof.  Cf. <u>Witover v. Celebrity Cruises, Inc.</u>, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016) (observing that under maritime law: "The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness.  Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background.'  Whereas, liability for negligent retention occurs after employment begins, where the employer knows or should

---

[5] See <u>Paul v. Bradshaw</u>, Case No. 12-81381-CIV-ROSENBAUM/SELTZER, 2013 WL 12084298, at *8 (S.D. Fla. Aug. 7, 2013) ("A review of controlling cases shows that plaintiffs who bring § 1983 claims such as excessive force together with claims of negligent hiring and retention often bring the negligent-hiring-and-retention claims only under state law, not also under § 1983.  Nevertheless, claims of negligent hiring and retention brought against a municipality under § 1983 are not without precedent." (internal citations omitted) (citing <u>Ashley v. City of Hialeah</u>, No. 11-20490-CIV, 2011 WL 3236051, at *4-6 (S.D. Fla. July 28, 2011); <u>Santana v. City of Hialeah</u>, No. 08-22104-CIV, 2009 WL 6635306, at *1 (S.D. Fla. Nov. 30, 2009)).

know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment.") (citations and quotation marks omitted).

Where, as here, a complaint alleges a single instance of negligent hiring (as opposed to a pattern or practice), a plaintiff can establish municipal liability under Section 1983 "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." Brown, 520 U.S. at 411. As such, municipal liability turns on "whether [the officer's] background made his use of excessive force in making an arrest a plainly obvious consequence of the hiring decision."[6] Id. at 412. See also Griffin v. City of Opa-Locka, 261 F.3d 1295, 1313 (11th Cir. 2001) ("To impose § 1983 liability based on a hiring decision, a plaintiff must demonstrate that the municipal actor disregarded a known or obvious consequence of hiring the applicant. It is not sufficient under this standard that a municipal actor's inadequate screening of an applicant's record reflects an 'indifference' to the applicant's

---

[6] As one court has observed:

> Courts that have addressed Brown have consistently interpreted it to mean that municipal liability for negligent hiring based on a single hiring decision requires the threat identified in an applicant's background to be basically identical to the harm eventually caused by the applicant. See, e.g., Morris v. Crawford Cnty., 299 F.3d 919, 923 (8th Cir. 2002) (collecting various circuit courts of appeal cases and finding that "[t]he prior complaints in an applicant's background must be nearly identical to the type of officer misconduct that caused the constitutional deprivation allegedly suffered by a plaintiff. Courts routinely reject attempts to satisfy [Brown's] causal connection requirement where none of the prior complaints in an applicant's background were of the same or similar type of officer misconduct that caused the plaintiff's injury").

M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 43 F. Supp. 3d 412, 426-27 (M.D. Pa. 2014).

background. Rather, a plaintiff must demonstrate that the municipal hiring decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.") (citing Brown, 520 U.S. at 411).

On the other hand, negligent retention of an officer necessarily occurs (if at all) after the officer has been hired. See Paul v. Bradshaw, Case No. 12-81381-CIV-ROSENBAUM/SELTZER, 2013 WL 12084298, at *8 (S.D. Fla. Aug. 7, 2013) (discussing a negligent retention claim alleging that the Sheriff "violated § 1983 by negligently retaining [a deputy] after hiring him"); see also Ashley v. City of Hialeah, No. 11-20490-CIV, 2011 WL 3236051, at *4-5 (S.D. Fla. July 28, 2011) (finding that the complaint failed to state a claim for negligent hiring but plausibly stated a claim for negligent retention under Section 1983).

Because Count IV attempts to allege two separate constitutional violations, it is an impermissible "shotgun pleading." See Warner v. City of Marathon, 718 F. App'x 834, 839 (11th Cir. 2017) (affirming dismissal of Section 1983 claims on shotgun pleading grounds because, inter alia, they included "at least four distinct causes of action . . . in each count"); Pinto v. Collier Cnty., Case No. 2:19-cv-551-FtM-60MRM, 2019 WL 5722172, at *2 (M.D. Fla. Nov. 5, 2019) (finding that a single count under Section 1983 which "lump[ed] multiple constitutional violations" together constituted an improper shotgun pleading); Fleurant v. City of Port St. Lucie, CASE NO. 19-14032-CV-ROSENBERG/MAYNARD, 2019 WL 12021808, at *3 (S.D. Fla. June 27, 2019) (finding that the complaint constituted a shotgun pleading where it contained a count alleging Section 1983 violations "based on various rights and multiple legal theories"), report and

recommendation adopted, 2019 WL 12025011 (S.D. Fla. July 16, 2019). "This improper mixing of claims makes it difficult for Defendants to respond accordingly and present defenses, and for the Court to appropriately adjudicate this case." Pinto, 2019 WL 5722172, at *2.

Accordingly, the Court will dismiss Count IV without prejudice and provide Plaintiff leave to replead the separate constitutional claims as separate counts consistent with Rule 8(a), Rule 10(b), and Twombly/Iqbal, if he is able to do so. This may be Plaintiff's final opportunity to replead his claims. See Vibe Micro, 878 F.3d at 1296 (stating that a district court is required to permit a litigant one chance to remedy any shotgun pleading deficiencies).

### b. Count V: "Negligent Supervision and/or Retention of Defendant Llanes by City of Miami (42 U.S.C. § 1983)"

The title of Count V alleges that the City both negligently supervised and negligently retained Officer Llanes. (Compl. at 16.) However, within Count V Plaintiff additionally alleges that the City failed to adequately train Officer Llanes. (See id. ¶ 97 ("The CITY OF MIAMI was aware, or should have been aware, of prior problems with DEFENDANT LLANES that would have necessitated additional training."); id. ¶ 98 ("The CITY OF MIAMI failed to provide additional training.")). And, in his Response, Plaintiff appears to concede that Count V alleges a failure to train. (See Resp. at 11 ("Within Count V is the allegation that the City knew or should have known that Officer Llanes had exhibited prior problems and that it should have provided additional training to him.").) Thus, in Count V, Plaintiff is attempting to assert a negligent supervision claim, a negligent

retention claim, and a failure to train claim under Section 1983. (See id. (arguing that the Government failed to assert an argument regarding Count V to the extent that it asserts a claim for negligent supervision and negligent retention).)

Claims under Section 1983 for negligent supervision and failure to train are separate claims. Massey v. Dorning, __ F. Supp. 3d __, 2020 WL 607573, at *12 (N.D. Ala. 2020) ("Failure-to-train and failure-to-supervise are separate claims.") (citing Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998); Thomas ex rel. Thomas v. Roberts, 261 F.3d 1160, 1175 (11th Cir. 2001)). As discussed in Section III(a), supra, negligent retention is also a separate and distinct claim, and it is unclear how the negligent retention claim Plaintiff is alleging in Count V is different from the one in Count IV.

Because Count V attempts to allege three separate constitutional violations, it is an impermissible "shotgun pleading." See Warner, 718 F. App'x at 839 (affirming dismissal of Section 1983 claims on shotgun pleading grounds because, inter alia, they included "at least four distinct causes of action . . . in each count"); Pinto, 2019 WL 5722172, at *2 (finding that a single count under Section 1983 which "lump[ed] multiple constitutional violations" together constituted an improper shotgun pleading); Fleurant, 2019 WL 12021808, at *3 (finding that the complaint constituted a shotgun pleading where it contained a count alleging Section 1983 violations "based on various rights and multiple legal theories"), report and recommendation adopted, 2019 WL 12025011. "This improper mixing of claims makes it difficult for Defendants to respond accordingly and present defenses, and for the Court to appropriately adjudicate this case." Pinto, 2019 WL 5722172, at *2.

11

Accordingly, the Court will dismiss Count V without prejudice and provide Plaintiff leave to replead the separate constitutional claims as separate counts consistent with Rule 8(a), Rule 10(b), and Twombly/Iqbal, if he is able to do so.  This may be Plaintiff's final opportunity to replead his claims.  See Vibe Micro, 878 F.3d at 1296 (stating that a district court is required to permit a litigant one chance to remedy any shotgun pleading deficiencies).

    **c.**    **Count VI: "Fourth Amendment Violation by False Arrest, False Imprisonment, and/or Malicious Prosecution by Defendant Llanes (42 U.S.C. § 1983)"**

Count VI alleges Fourth and Fourteenth Amendment violations under Section 1983 against Officer Llanes based on false arrest, false imprisonment, and malicious prosecution.  These are separate constitutional claims that must be pled separately.

Specifically, a false arrest under Section 1983 is a warrantless arrest made without probable cause.[7]  Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996); Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990) (citing Herren v. Bowyer, 850 F.2d 1543, 1547 (11th Cir. 1988); Reeves v. City of Jackson, Miss., 608 F.2d 644, 651 (5th Cir. 1979)).[8]

False imprisonment under Section 1983 is the <u>detention</u> resulting from a false arrest. Ortega, 85 F.3d at 1526 (citing Reeves, 608 F.2d at 653).  "Where a police officer lacks

---

[7] "[A] plaintiff who claims false arrest pursuant to a warrant is making a claim of malicious prosecution rather than false arrest."  Giles v. Manser, 757 F. App'x 891, 895 (11th Cir. 2018) (citing Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir. 1995)).

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." Id. (citing Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)). To establish a claim for false imprisonment under Section 1983, Plaintiff "must meet the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment." Id. (citing Cannon v. Macon Cnty., 1 F.3d 1558, 1562-63 (1993)). The elements for common law false imprisonment are "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." Id. at 1526 n.2.

And malicious prosecution under Section 1983 is (i) a violation of the Fourth Amendment right to be free of unreasonable seizures plus (ii) the common law tort of malicious prosecution. Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003). See also Grider v. City of Auburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010). The elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Wood, 323 F.3d at 882.

Because Count VI attempts to allege three separate constitutional violations, it is an impermissible "shotgun pleading." See Warner, 718 F. App'x at 839 (affirming dismissal of Section 1983 claims on shotgun pleading grounds because, inter alia, they included "at least four distinct causes of action . . . in each count"); Pinto, 2019 WL 5722172, at *2 (finding that a single count under Section 1983 which "lump[ed] multiple constitutional

13

violations" together constituted an improper shotgun pleading); <u>Fleurant</u>, 2019 WL 12021808, at *3 (finding that the complaint constituted a shotgun pleading where it contained a count alleging Section 1983 violations "based on various rights and multiple legal theories"), <u>report and recommendation adopted</u>, 2019 WL 12025011. "This improper mixing of claims makes it difficult for Defendants to respond accordingly and present defenses, and for the Court to appropriately adjudicate this case." <u>Pinto</u>, 2019 WL 5722172, at *2.

Accordingly, the Court will dismiss Count VI without prejudice and provide Plaintiff leave to replead the separate constitutional claims as separate counts consistent with Rule 8(a), Rule 10(b), and <u>Twombly</u>/<u>Iqbal</u>, if he is able to do so. This may be Plaintiff's final opportunity to replead his claims. <u>See</u> <u>Vibe Micro</u>, 878 F.3d at 1296 (stating that a district court is required to permit a litigant one chance to remedy any shotgun pleading deficiencies).

**IV.   Conclusion**

Although the Court takes no position on the merits of Defendants' arguments regarding the Complaint's failure to state a claim upon which relief can be granted, to the extent that those arguments have merit Plaintiff should endeavor to cure <u>all</u> of the deficiencies identified by both Defendants' Motions. In this regard, the Court notes that the City argues that it is entitled to sovereign immunity against Plaintiff's state law claims because: (1) allegations of malicious conduct by government employees preclude recovery against a governmental employer under Section 768.28(9), Florida Statutes; (2) Paragraph 1 of the Complaint alleges that "Defendants" committed "malicious" violations of

Plaintiff's constitutional rights, (Compl. ¶ 1); (3) Paragraph 2 of the Complaint alleges that Defendants violated Plaintiff's "constitutional and state rights under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of PLAINTIFF's rights[,]" (id. ¶ 2); and (4) Counts XIII, IX, and X each incorporate Paragraphs 1 and 2, (id. ¶¶ 119, 126, 133). (Mot. at 11-12 (citing Fletcher v. City of Miami, 567 F. Supp. 2d 1389 (S.D. Fla. 2008); Gregory v. Miami-Dade Cnty., 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015)).)  In his Response, Plaintiff argues, inter alia, that the assertion that Defendants committed violations of Plaintiff's "constitutional and state rights under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard" for those rights is a pleading "in the alternative." (Resp. at 5-6 (emphasis in original).)

However, it is entirely unclear from the Complaint that the allegations of malicious conduct are intended to be pled in the alternative, as Paragraphs 1 and 2 are incorporated into each of the state law claims, Paragraph 1 unambiguously alleges that "Defendants" committed "malicious" violations of Plaintiff's constitutional rights, (Compl. ¶ 1), and Paragraph 2 unambiguously alleges that Defendants acted "in bad faith and with malicious purpose in reckless, wanton, and willful disregard of PLAINTIFF's rights[,]" (Compl. ¶ 2). If Plaintiff intends to allege that Defendants acted maliciously and in bad faith in the alternative to some other mens rea, the Amended Complaint should do so clearly. Again, this may be the last opportunity Plaintiff has to amend his Complaint, so care should be taken to cure all potential pleading deficiencies.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Complaint (D.E. 1) is **DISMISSED** without prejudice as an impermissible shotgun pleading;

2. Plaintiff shall have **FOURTEEN DAYS** to file an Amended Complaint that cures all deficiencies;

3. The City of Miami's Motion to Dismiss (D.E. 10) is **DENIED AS MOOT**;

4. Officer Llanes's Motion to Dismiss Counts III and VI is **DENIED AS MOOT**;

5. In the event Officer Llanes wishes to file a partial motion to dismiss the forthcoming Amended Complaint under Rule 12(b), he must file the motion before he files any answer, Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); see also Leonard v. Enterprise Rent a Car, 279 F.3d 967, 971 n.6 (11th Cir. 2002); Byrne v. Nehat, 261 F.3d 1075, 1093 n.35, 1096 n.46 (11th Cir. 2001), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008), as recognized by Jackson v. Bank of America, 898 F.3d 1348, 1358 n.10 (11th Cir. 2018); see also Whitehurst v. Wal-Mart Stores E., L.P., 329 F. App'x 206, 208 (11th Cir. 2008); Vergara v. Davis Bancorp., Inc., Case No. 10-21746-CIV-GRAHAM-TORRES, 2010 WL 11553420, at *1 (S.D. Fla. Aug. 17, 2010) (finding that the defendant's motion to dismiss was null because it was filed after the answer, even though it was filed the same day as the answer); O'Hagan v. M & T Marine Grp.,

LLC, No. 06–61635–CIV, 2010 WL 503118, at *1 (S.D. Fla. Feb. 8, 2010) (same).

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of August, 2021.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**